| | |
|---|---|
| **WANDA L. GRANT** | **CIVIL ACTION NO. 17-00642** |
| **VERSUS** | **JUDGE JOHN W. DEGRAVELLES** |
| **OCEANS HEALTHCARE, LLC AND**<br>**OCEANS ACQUISITION, INC.** | **MAG. JUDGE RICHARD L.**<br>**BOURGEOIS, JR.** |

## RULING AND ORDER

This matter comes before the Court on Plaintiff, Wanda Grant's ("Plaintiff" or "Grant")

*Motion for Partial Summary Judgment.* (Doc. 31). Defendants, Oceans Healthcare, LLC, Oceans

Acquisition, Inc. and Oceans Behavioral Hospital of Baton Rouge, LLC ("Defendants" or

collectively "Oceans"), opposed the motion. (Doc. 36). Plaintiff replied. (Doc. 40). Also before

the Court is Defendants' *Motion for Summary Judgment*. (Doc. 32). Plaintiff opposed the motion.

(Doc. 37). Defendants replied. (Doc. 39). The Court has carefully considered the law, the facts

in the record, and the arguments and submissions of the parties and is prepared to rule. For the

following reasons, Plaintiff's motion for partial summary judgement is denied. Defendants'

motion for summary judgment is granted.

## I.     Factual Background

Plaintiff instituted suit against Defendants on September 14, 2017. (Doc. 1). Plaintiff

alleged that Defendants violated the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq,

("ADA"), (Doc. 1, p. 1), and Louisiana state law "for disability discrimination", La. R.S. 23:323.

(Doc. 1, p. 5). Plaintiff characterizes herself as a "cancer survivor" and asserts that she was

perceived to have a disability and was discriminated in her workplace on the basis of a past

diagnosis. (*Id*.).

Plaintiff is a Licensed Professional Counselor ("LPC") and was hired as a therapist by Oceans Behavioral Hospital of Baton Rouge ("Hospital") on November 29, 2016. (Doc. 1, p. 3). Eight years prior to being hired by the Hospital, Plaintiff "was diagnosed with stage 0 cancer (pre-cancer) and underwent treatment". (*Id*.). On January 10, 2017, Plaintiff underwent a mammogram and ultra sound to investigate a lump. Because of her prior history, Plaintiff was concerned. Prior to undergoing her mammogram and ultra sound, Plaintiff alleges that she advised her immediate supervisor, Joyce Garon, of her reason for a need to take leave. (Doc. 1, pp. 3-4). Ms. Garon does not recall Plaintiff's request for time off for a mammogram or a disclosed history of breast cancer. (Doc. 39-1, p. 3).

When Plaintiff returned to work after her appointment on January 11, 2017, she alleges that she "was approached" by "her administrator", Valerie Dalton, regarding the "results of her mammogram". (Doc. 1, p. 4). Ms. Dalton, Administrator for the Hospital, claims that Plaintiff approached her and volunteered that she had recently been absent for a mammogram and was concerned because of a breast cancer history. (Doc. 32-4, p. 4).

On January 12, 2017, Plaintiff's employment was reduced from full-time therapist to an as-needed status ("PRN"). Plaintiff claims that Dalton told her that she would remain on PRN status "until she could find another job, because her current position was being phased out". Plaintiff claims that she was "[u]ltimately" "forced to resign". (*Id*.). Dalton denies stating "until [you] can find another job" or that the position of therapist was being phased out. The reason for the demoted work status was decreased patient attendance evidenced by a recent patient census and resulting downward fiscal trends and decreased revenue. Two other employees, a nurse and a driver, were also demoted in status due to the planned reduction in force. (Doc. 32-4).

Plaintiff alleges that she was "later informed" by "a human resources representative" that she was "in fact forced out of her position" due to "the fear of a cancer relapse, which would cause her to miss work". (*Id.*). Defendants deny this statement.

Plaintiff amended her Complaint on October 10, 2017. (Doc. 5). The amended Complaint did not alter the allegations summarized above from the original Complaint; however, Plaintiff identified the various Oceans Defendants as "Defendant 1", "Defendant 2" and "Defendant 3", asserting that any one of the Defendants or collectively are potentially responsible. (Doc. 5).

## II.    Relevant Standard - Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts … [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(citations and internal quotations omitted). The party opposing the motion for summary judgment may not sit on his hands, complacently relying on the pleadings. *Weyant v. Acceptance Ins. Co.*, 917 F.2d 209 (5th Cir. 1990). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. General allegations that fail to reveal detailed and precise facts will not prevent

the award of summary judgment.  *Walton v. Alexander*, 20 F.3d 1350, 1352 (5th Cir. 1994).

Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

## III.    Discussion

### A.    Plaintiff's Motion for Partial Summary Judgment (Doc. 31)

On her Motion for Partial Summary Judgment, Plaintiff asks the Court to find that she prevails on her claim of disability discrimination under the ADA.  Plaintiff does not seek a finding related to her claim under the LEDL.  Plaintiff argues her *prima facie* case of disability discrimination under the ADA supported by record evidence and argues that Defendants' legitimate, non-discriminatory reason for reducing her employment status was a pretext.

#### 1.    Plaintiff's Memorandum in Support (Doc. 31-2)

Plaintiff is a Licensed Professional Counselor.  She was hired as a therapist on November 29, 2016, to work at Oceans' Intensive Out-Patient Clinic ("IOP").  (Doc. 31-2, p. 1 (citing Doc. 31-4)).  In 2002, Plaintiff claims that she was "diagnosed with breast cancer".  (Doc. 31-2, p. 1 (citing Doc. 31-3, p. 109, ll. 7-24)).  On January 9, 2017, Plaintiff underwent a mammogram and ultrasound to investigate a lump.  (Doc. 31-2, p. 1 (citing Doc. 31-3, p. 119, ll. 6-12)).  When she returned to work, she provided her supervisor with a note from her doctor regarding the reason for her absence.  (Doc. 31-2, p. 1 (citing Doc. 31-3, p. 120, ll. 19-25)).  On January 11, 2017, Plaintiff claims that the facility administrator, Valerie Dalton, approached her regarding the results of her medical appointment.  (Doc. 31-2, p. 1 (citing Doc. 31-1, p. 120, pp. 6-15)).  On January 12, 2017,

Plaintiff met with Dalton and the facility human resources director at the time, Edward Hannie, at which time, Plaintiff's employment was reduced to PRN status. Plaintiff alleges that Dalton advised her that she could remain at this status until she found other employment. (Doc. 31-2, p. 2 (citing Doc. 31-3, p. 131, ll. 19-23)). Plaintiff resigned instead. (Doc. 31-2, p. 2 (citing Doc. 31-4)). Hannie later advised Plaintiff that she was "forced out of her position" by Dalton due to a fear of cancer relapse and being left short-handed. (Doc. 31-2, p. 2 (citing Doc. 31-4, pp. 144-145)).

Plaintiff first argues that she is a "qualified individual by being regarded as disabled". (Doc. 31-2, p. 5). Plaintiff avers that: she discussed with her supervisor that she was a cancer survivor and there was a concern of relapse, (Doc. 31-2, p. 5 (citing Doc. 31-3, p. 120, ll. 6-25; Doc. 31-4, p. 130, ll. 2-6)); she experienced a "prohibited adverse action" when her employment was reduced from full time to "'as needed'" presumably based on the assumption that she would take time off for medical care related to cancer, (Doc. 31-2, p. 5 (citing Doc. 31-4, pp. 134-36)); she requested a leave of absence to attend a medical appointment, (Doc. 31-2, p. 5 (citing Doc. 31-3, p. 120, ll. 6-25)); she submitted a note from her doctor upon return to work, (*id*.); Dalton later inquired about Plaintiff's diagnosis and treatment, (*id*.); Dalton indicated that Plaintiff should provide her with the test results, (*id*.); Dalton and Hannie then informed Plaintiff of her change in employment, (Doc. 31-2, pp. 5-6 (citing Doc. 31-3, p. 120, ll. 6-25)); and the close proximity in time of Plaintiff notifying her employer of her medical status and the change in employment status is a "sufficient inference that Defendants regarded Plaintiff as disabled". (Doc. 31-2, p. 6 (citing *Suggs v. Cent. Oil of Baton Rouge, LLC,* Civ. A. 13-25, 2014 WL 3037213, at *6 (M.D. La. July 3, 2014)).

Plaintiff also relies upon *Maldonado v. U.S. Bank*, 186 F.3d 759, 767 (7th Cir. 1999); *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc*., 198 F.3d 68, 73 (2nd Cir. 1999); *Price v. Dolphin Servs., Inc*., No. 99-3888, 2000 WL 1789962, at *10 (E.D. La. Dec. 5, 2000); and *Costello v. St. Francis Hosp*., 258 F. Supp. 2d 144 (E.D.N.Y. 2003) for the premise that a close proximity in time between when a medical condition arises or is disclosed and the change in employment status infers discrimination.

Next, Plaintiff argues that she was qualified to perform the essential functions of her job. (Doc. 31-2, p. 8). Plaintiff points out that the record is absent of any disciplinary actions taken against her or notations of poor performance. In fact, Plaintiff argues that she was "indispensable". (*Id*. (citing Doc. 31-4, pp. 123-24, 143)).

Plaintiff contends that she was constructively discharged. (Doc. 31-2, p. 8). Plaintiff avers that she was compelled to resign and had no choice otherwise. (Doc. 31-2, pp. 9-10).

Plaintiff argues that Defendants' proffered reason for her change in employment was a pretext for discrimination. (Doc. 31-2, p. 10). According to Plaintiff, Defendants' proffered reason that it reduced its staff due to a drop in the patient census is not supported by the evidence. Plaintiff highlights the deposition testimony of Hannie that there was no knowledge of any other therapist having their hours reduced and how it was difficult to find licensed therapists in the Baton Rouge market. (Doc. 31-2, p. 11 (citing Doc. 31-4, p. 185)).

## 2. Defendants' Opposition (Doc. 36)

Defendants oppose Plaintiff's motion and argue that Plaintiff cannot prove every element of her claim and cannot show that "any adverse employment action was taken 'because' she was 'regarded as' disabled under the ADAAA". (Doc. 36, p. 1). Defendants claim that the decision to move Plaintiff to a "part time as needed" position was made before Plaintiff disclosed her cancer

history to a "decision-maker".  (*Id.*).  Defendants further contend that they reduced the hours of three employees due to a decline in the patient census.  (Doc. 36, p. 2).

Defendants first argue that the deposition testimony of Edward Hannie should not be considered because he "failed to comply with a Subpoena and Notice of Deposition and walked out before his deposition was completed".  (Doc. 36, p. 2).  Defendants also argue that this Court "previously held that Defendants' Motion *in Limine* was moot because Plaintiff 'has represented during this conference that they do not intend to use these exhibits at trial'".  (*Id.* (citing Doc. 23, p. 2)).  Based upon the ruling on Defendants' Motion *in Limine*, Defendants contend that Plaintiff cannot now attempt to utilize a Declaration of Hannie and portions of an audio recording played at his deposition.  Defendants reason that this Court granted an extension in response to Defendants' motion *in limine* in order to allow Defendants the opportunity to cross-examine Hannie regarding his declaration and audio recording; however, because Hannie "stormed out" of his deposition before Defendants could do so, Defendants were robbed of the opportunity to cross-examine him on this evidence.  Therefore, it is unfair for Plaintiff to utilize this evidence in support of her motion.  (Doc. 36, pp. 2-3).

Although it is undisputed that Plaintiff was employed by Oceans Behavioral Hospital, Defendants argue that Plaintiff has not shown that she was employed by Oceans Acquisition, Inc. or Oceans Healthcare, LLC.  (Doc. 36, p. 3).

Because Plaintiff alleges that she was "regarded as" having a disability, Defendants argue that Plaintiff concedes that she is not disabled.  (Doc. 36, p. 4).  Defendants argue that Plaintiff cannot show that she was "regarded as" disabled because she relies on an alleged remark from Dalton "which is denied, and not an undisputed fact".  (Doc. 36, p. 5 (citing Dalton Declaration, ¶ 28, and Dalton Supplemental Declaration, ¶ 14)).

Defendants also argue that Plaintiff cannot show that any adverse action was taken against her because of the alleged disability. Plaintiff's offered evidence does not show that Dalton knew of the purported disability before the decision was made to change Plaintiff's position. Defendants argue that Plaintiff does not identify her supervisor by name, to whom she contends she disclosed her cancer history, or show that her supervisor was involved in the decision to reduce her work. (Doc. 36, p. 5).

Specifically, Defendants state that it is "undisputed that at least by January 6, 2019, Dalton had decided to implement a reduction in force to address the sharp decline in patient attendance at the IOP, which included moving Plaintiff to PRN". (Doc. 36, p. 6 (citing Doc. 31-4, pp. 76-77; Doc. 36-3, ¶¶ 19-20; Doc. 36-5, ¶¶ 10-13)). Plaintiff testified that it was not until January 11, 2017, that she advised Dalton about her history with breast cancer. (Doc. 36, p. 6 (citing Doc. 31-3, p. 144)). Defendants point to the record that "clearly reflects" that three positions (a nurse, Plaintiff as a therapist, and a driver" were selected for the reduction in force. (Doc. 36, p. 6 (citing Doc. 36-5, ¶¶ 10-13; Doc. 36-2, ¶¶ 10-15, Doc. 36-3, ¶¶ 19-20)). Defendants argue that an employer is not required to foresee the future, and to allow any plaintiff to succeed on a disability claim "under these circumstances" would essentially mean that all an employee must do is "show up" for a termination meeting and immediately report a medical condition, thwarting termination of his/her employment. (Doc. 36, p. 6 (citing *Windham v. Harris Cty., Texas*, 875 F.3d 229, 236 (5th Cir. 2017)). Defendants rely upon *Hedberg v. Indiana Bell Tel. Co*., 47 F.3d 928 (7th Cir. 1995), where the employer offered affidavits evidencing that the decision to terminate the plaintiff's employment was made before the disability was disclosed to the employer, and the plaintiff could not offer evidence to controvert the affidavit testimony. (Doc. 36, pp. 6-7).

Defendants argue that the reduction in force was a legitimate, nondiscriminatory reason to change Plaintiff's employment. (Doc. 36, p. 7). Defendants contend that "the record clearly reflects" that Defendants saw a "substantial drop" in patient attendance in December 2016 and that the trend would continue for up to six months. (Doc. 36, p. 7 (citing Doc. 36-3, ¶ 17)). Defendants argue that the evidence supports that the decline in patient attendance occurred for four months and that Defendants "fell behind" in budget by "$30,000 in revenue per month". (Doc. 36, pp. 7-8 (citing Doc. 36-3, pp. 8-9)). The reduction in force of three employees, including Plaintiff, was discussed in a conference call on January 6, 2017. (Doc. 36, p. 8 (citing Doc. 36-3, ¶ 20; Doc. 36-5, ¶¶ 12-13)). The selection of the employees for the reduction in force was based on seniority "in accordance with the Hospital's policy". (Doc. 36, p. 8 (citing Doc. 36-5, ¶¶ 8, 15; Doc. 31-3, pp. 92, 99-100)).

Defendants contend that because Plaintiff cannot show that her change in employment status was discriminatory, she cannot support a claim of constructive discharge. (Doc. 36, p. 8). Defendants argue that Plaintiff's position that Dalton offered the change in position until Plaintiff was able to find another job does not meet the burden of proving a claim of constructive discharge. A reasonable employee would not have felt compelled to resign. Defendants argue that two other employees did not feel compelled to resign in the same circumstances. (Doc. 36, p. 9).

Plaintiff's response to Defendants' argument on constructive discharge is that her position was different than the other two employees made the subject of the alleged reduction in force and that the other two employees were given a guaranteed number of hours per week that they worked at the part-time position, whereas Plaintiff claims she was not. Defendants argue that the selection of the three employees was directly tied to the number of patients attending each day and the ratio of staff to the number of patients. (Doc. 36, p. 9 (citing Doc. 36-3, ¶ 6)).

### 3. Plaintiff's Reply (Doc. 40)

Pertaining to Defendants' challenge to the consideration of the deposition of Hannie, Plaintiff argues that Hannie's declaration should be considered just like "any of the multiple declarations submitted by the Defendants". (Doc. 40, p. 1). Also, Plaintiff claims that Hannie's deposition testimony, audio recording and declaration are all inconsistent; therefore, they should all be considered. (*Id.*). Lastly, Plaintiff argues that Hannie "authenticated" his declaration and audio recording during his deposition. (Doc. 40, pp. 1-2). Plaintiff does not address Hannie allegedly leaving his deposition before Defendants had an opportunity to cross-examine him.

Regarding whether Oceans Healthcare, LLC and Oceans Acquisition, Inc. are "employers" under the ADA, Plaintiff argues that Hannie testified that he was the corporate human resources director "of all of the Oceans facilities in Louisiana". (Doc. 40, p. 2 (citing Doc. 31-4, p. 23)). Plaintiff infers that Hannie's testimony evidences that he acted on behalf of Oceans Healthcare, LLC and Oceans Acquisition, Inc., in addition to the Hospital, in participating in the changing of Plaintiff's employment status.

Plaintiff argues that Dalton and Rhonda Arrington, Regional Human Resources Director, both testified that they discussed Plaintiff's cancer disclosure and the possible ramifications it may have on the "previous decision" to reduce her hours; therefore, Plaintiff was "regarded as" being disabled. (Doc. 40, p. 2 (citing Doc. 32-4, p. 4; Doc. 32-6, p. 4)). Further, Dalton contacted human resources to discuss Plaintiff's medical condition and whether it would prejudice the decision to reduce Plaintiff's hours. (Doc. 40, pp. 2-3). Combined with Hannie's testimony that Dalton changed Plaintiff's employment out of a concern that she would miss work due to cancer, Plaintiff argues that this evidences the element of being "regarded as" disabled. (Doc. 40, p. 3).

Plaintiff contends that "Defendants cannot establish with collaborating [sic] evidence when the decision to reduce Plaintiff to PRN was actually made". (*Id*.). Plaintiff suggests that the record reflects "aggravating factors" of constructive discharge, such as Defendants' request for test results, the reduction in employment status without a guarantee of hours, and the statement "until you get a new job". (*Id*.). Plaintiff then states, "Defendant should impute unreasonableness when Plaintiff rejected Ms. Dalton's offer that reduced her fulltime employment to 'at will' position with no guarantee of hours". (*Id*.). (Plaintiff seems to suggest that a "fulltime employee" is not or cannot also be an "at will" employee.). Plaintiff concludes that the "more reasonable inference is that Plaintiff was being fired". (Doc. 40, p. 4).

In an attempt to discredit Defendants' offered evidence of a legitimate, nondiscriminatory reason for changing Plaintiff's employment, Plaintiff points to Dalton's declaration that she felt that the patient census was "robust enough" to hire a fourth therapist (*i.e*., Plaintiff) on November 29, 2016. (*Id*. (citing Doc. 32-4, pp. 2, 10)). Plaintiff questions that the census dropped at "such an alarming number" in one month's time, that it was necessary to implement a reduction in force. (Doc. 40, p. 4). Plaintiff argues that the evidence regarding a census drop is "unfounded". (*Id*.).

Finally, Plaintiff challenges that Defendants established that the decision to change Plaintiff's employment status was made before January 12, 2017. (Doc. 40, pp. 4-5). Plaintiff contends that it is "inconclusive" when the decision was made. (Doc. 40, p. 5).

**B.  Defendants' Motion for Summary Judgment  (Doc. 32)**

In Defendants' competing Motion for Summary Judgment, Defendants seek dismissal of Plaintiff's claims under both the ADA and the Louisiana Employment Discrimination Law ("LEDL"). Defendants argue that even if Plaintiff can prove the elements of her prima facie case of disability discrimination, which is disputed by Defendants, she cannot show that Defendants'

legitimate, non-discriminatory reason for subjecting Plaintiff to a reduction in force was a pretext. Therefore, Defendants argue, Plaintiff's claims should be dismissed as a matter of law.

## 1. Defendants' Memorandum in Support (Doc. 32-1)

Defendants move for the dismissal of Plaintiff's claims under both the ADA and the Louisiana Employment Discrimination Law ("LEDL"). (Doc. 32-1, p. 2, n. 1). Defendants contend that Plaintiff cannot establish a *prima facie* case of disability discrimination because she cannot show that she suffered an adverse employment decision "because of" a "disability" or that she was "regarded as" disabled as defined by the ADA. (Doc. 32-1, p. 2). First, Defendants highlight that Plaintiff's employment was not terminated. Plaintiff was offered a part-time position due to a reduction in force. Rather than work part time until the patient attendance improved, Plaintiff chose to resign. (*Id.*). Regardless, Defendants argue that Plaintiff cannot show that she was disabled or "regarded as" disabled. (*Id.*). Not only is a reduction in force a legitimate, nondiscriminatory reason to alter an employee's status, but the decision to do so was also made prior to any advisement of cancer. (Doc. 32-1, pp. 2-3).

Defendants detail the purported material facts in their motion. (Doc. 32-1, pp. 3-6). Oceans Behavioral Hospital ("the Hospital") operates an Intensive Outpatient Program ("IOP") that provides mental health services to patients on an outpatient basis. (Doc. 32-1, p. 3 (citing Doc. 32-4, ¶ 5; Doc. 32-5, p. 88)). Three positions operate the IOP: nurse, therapist, and driver/mental health technician. (Doc. 32-1, p. 3 (citing Doc. 32-4, ¶ 6)). Based on patient attendance of over 40 patients per day and a maintained ratio of one therapist per 10 patients, a fourth therapist, *i.e.*, Plaintiff, was hired on November 29, 2016, as a Licensed Professional Counselor ("LPC"). She was employed until January 12, 2017. (Doc. 32-1, p. 3 (citing Doc. 32-4, ¶ 12; Doc. 32-5, pp. 19, 89)).

In December 2016, Defendants claim that the IOP saw a "sharp downturn" in patient attendance from 40 patients per day to 12-15 patients per day. (Doc. 32-1, p. 3 (citing Doc. 32-4, ¶ 13)). Defendants state that on December 13, 2016, then Corporate Director of Outpatient Services, Shamieka Thomas, visited the IOP and met with the Hospital Administrator, Valerie Dalton, after which employees were advised that if attendance did not improve, then layoffs would be necessary. (Doc. 32-1, pp. 3-4 (citing Doc. 32-4, ¶¶ 14, 18; Doc. 32-3, ¶ 7; Doc. 32-5, p. 106)). December closed with average daily attendance of 30.8 patients per day. (Doc. 32-1, p. 4 (citing Doc. 32-4, ¶ 16)). Projections indicated that the drop in attendance would continue for three to six months. (Doc. 32-1, pp. 3-4 (citing Doc. 32-4, ¶ 17)).

Defendants claim that on January 6, 2017, Dalton was tasked with developing a plan to reduce expenses. (Doc. 32-1, p. 4 (citing Doc. 32-4, ¶ 19; Doc. 32-3, ¶¶ 9-11; Doc. 32-6, ¶¶ 10-11)). Dalton proposed reducing work status and hours for three employees, including Plaintiff. (Doc. 32-1, p. 4 (citing Doc. 32-4, ¶ 20; Doc. 32-6, ¶¶ 12-13; Doc. 32-3, ¶¶ 13-14)). She worked with Thomas and Rhonda Arrington, then Corporate Human Resources Director, to detail the reduction in force. (Doc. 32-1, p. 4 (citing Doc. 32-4, ¶ 21; Doc. 32-6, ¶ 14; Doc. 32-3, ¶ 15)). The plan was finalized on January 10, 2017. (Doc. 32-1, p. 4 (citing Doc. 32-4, ¶ 22; Doc. 32-3, ¶¶ 13-14)). Defendants quote the Hospital's Employee Handbook provision for "Low Census Periods" which explains that a reduction in force may be necessary due to "business conditions" and that this decision will be based on a number of factors, including seniority of employees. (Doc. 32-1, pp. 4-5 (citing Doc. 32-5, pp. 98-99; Doc. 32-6, ¶¶ 6, 8)).

On January 11, 2017, Arrington approved the reduction in force for the three employees, which included Plaintiff. (Doc. 32-1, p. 5 (citing Doc. 32-4, ¶ 24; Doc. 32-6, ¶ 16)). "Later that day," Plaintiff volunteered to Dalton that she had a mammogram and was concerned because of

her history of breast cancer. (Doc. 32-1, p. 5 (citing Doc. 32-4, ¶ 26; Doc. 32-5, pp. 123-25)). Dalton conveyed that she hoped "everything was ok". (Doc. 32-1, p. 5 (citing Doc. 32-4, ¶ 26)). Dalton found Plaintiff's disclosure unusual because Plaintiff did not report to her or interact regularly with her; therefore, she advised "corporate"[1] of the disclosure before proceeding with the reduction in force. (Doc. 32-1, p. 5 (citing Doc. 32-4, ¶¶ 27-28)). Dalton advised Edward Hannie, then Hospital HR Director,[2] not to attend the previously scheduled meeting because she wanted to discuss these issues with "corporate". Dalton was later advised that the decision to implement a reduction in force was made before knowledge of the medical history, and the reduction in force had "nothing to do" with the medical history; therefore, the reduction in force proceeded as planned on January 12, 2017. (Doc. 32-1, p. 6 (citing Doc. 32-4, ¶ 30; Doc. 32-6, ¶ 19)). The nurse and driver accepted the part-time positions. Plaintiff indicated that she would consider it, and then she declined and "resigned" in her Personnel Action Report. (Doc. 32-1, pp. 5-6 (citing Doc. 32-4, ¶¶ 32-34)).

Defendants argue that Oceans Acquisitions, Inc. is the parent company of Oceans Behavioral Hospital; however, Oceans Healthcare, LLC has no ownership interest in the Hospital and is an entity in name only. Because Oceans Healthcare, LLC is a name only and has no employees, it did not employ Plaintiff. Therefore, Defendants argue, Oceans Healthcare, LLC cannot be liable to Plaintiff under the ADA and should be dismissed. (Doc. 32-1, p. 8).

Defendants next argue that Plaintiff cannot establish a *prima facie* case because she cannot show that she had a disability. Relying upon *Haralson v. Campuzano*, 356 F. App'x 692, 698 (5th

---

[1] It is not clear to what specific entity or person "corporate" refers. However, both parties use the term "corporate" to indicate a higher position of authority than Dalton within one of the Oceans entities. The Court quotes the term "corporate" for ease of reference throughout this ruling.

[2] Hannie's position at the time relevant to this motion was Hospital HR Director. Prior to Plaintiff being advised that she was the subject of a reduction in force, Hannie had put in his resignation. His last day of work was January 20, 2017.

Cir. 2009) and *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 191 (5th Cir. 1996), Defendants argue that the "Fifth Circuit has found that cancer and treatment for cancer alone do not constitute an impairment that substantially limits a 'major life activity'". Also, Defendants argue that "Plaintiff has admitted that she neither has cancer, nor had it during her employment" with the Hospital, but Defendants do not cite to evidence of this assertion. (Doc. 32-1, p. 9). Similarly, Defendants argue that Plaintiff cannot demonstrate a "record of impairment" or being "regarded as" impaired because she did not remember providing the Hospital with her medical history, and her personnel file did not contain any information regarding her medical history or cancer. (Doc. 32-1, pp. 9-10). Also, based on the record deposition testimony, Plaintiff can only show that she told Dalton that she was concerned about a mammogram because she previously had cancer. Defendants argue that this is insufficient to show that she was "regarded as" having a disability. (Doc. 32-1, pp. 10-11 (citing *Jenks v. Naples Cmty. Hosp., Inc.*, 829 F.Supp.2d 1235 (M.D. Fla. 2011)). Defendants also contend that Plaintiff cannot show that the decision to move her to PRN was because of her alleged disability. Defendants rely heavily on the fact that any information about cancer was only made known to a decision-maker after the decision to change Plaintiff's employment was made. (Doc. 32-1, p. 11 (citing *Rodriguez v. Mrs. Baird's Bakery*, 111 F.3d 893 (5th Cir. 1997)(citing *Hedberg v. Indiana Bell Tel. Co., Inc.*, 47 F.3d 928, 932 (7th Cir. 1995)))).

Even if Plaintiff could make a showing of a *prima facie* case, Defendants argue that they defeat Plaintiff's claims because of their legitimate, non-discriminatory reason for the employment action. (Doc. 32-1, p. 11). Defendants rely upon the facts set forth above and the cited evidence supporting same. Further, Defendants note that Plaintiff has not presented any evidence to refute Defendants' legitimate business need to reduce its staff due to a purported decline in business and loss in revenue. (Doc. 32-1, p. 12).

Defendants argue that Plaintiff cannot prove a claim of constructive discharge. A reduction of an employee's hours does not equate to a compelling reason to resign from employment. (Doc. 32-1, pp. 13-14). Defendants also argue that Plaintiff cannot show the level of harassment required to make a constructive discharge claim. Defendants anticipate that Plaintiff will rely on Hannie's statement that Plaintiff's employment status was changed due to a fear of absences related to cancer treatment. However, Defendants argue that this statement was not shared with Plaintiff until after she decided to resign from her employment; therefore, this statement was not a factor in her decision to leave and does not evidence constructive discharge. (Doc. 32-1, pp. 14-15).

Finally, Defendants argue that Hannie's "unsubstantiated hearsay", *i.e.*, his statement that Dalton changed Plaintiff's employment because of anticipated absences related to cancer treatment, cannot be utilized or relied upon to show pretext. Regardless, the statement is irrelevant because the decision had already been made to change Plaintiff's employment, and Plaintiff had already decided to resign in lieu of serving in the PRN position. (Doc. 32-1, pp. 15-16).

## 2. Plaintiff's Opposition (Doc. 37)

Plaintiff argues that Defendants regarded her as disabled because the testimony shows that she disclosed to Defendants her history of medical treatment and then she was subjected to adverse employment action due to the employer's perception of her impairment. (Doc. 37, p. 2). Plaintiff claims that she told her immediate supervisor, Joyce Garon, that she needed to take off work for a mammogram and that she was a cancer survivor before January 9th. (*Id*.). It was not until January 11th that she revealed the same to Dalton, who, Plaintiff claims, asked Plaintiff to provide the results of the mammogram as soon as possible. (*Id*.). Due to this timeline, as well as Plaintiff's allegation that Defendants forced her to resign, Plaintiff argues that evidence exists that Defendants regarded her as impaired. (*Id*.).

Plaintiff characterizes the confirmation of the decision to reduce the employment status of three IOP workers as "a first-time proposal", instead of a memorialization of prior plans. (Doc. 37, p. 3). This memorialization, confirmation, or "first time proposal" occurred on January 11th. (*Id.*). Plaintiff argues that in the January 11th communication (what Plaintiff calls the "Dalton email", Doc. 32-4, pp. 10-11), Arrington stated that she participated in the January 6th call and subsequently worked with Dalton and Thomas to develop a plan to reduce the employment status; therefore, Plaintiff argues that this evidenced that Arrington was not "familiar with the situation". (Doc. 37, pp. 3-4). Also, in the Dalton email, Dalton asks Arrington to call her to discuss the particular employees at issue. (Doc. 37, p. 4). Plaintiff argues that nothing in the Dalton email indicates that she was formalizing a prior discussion or confirming a plan to institute a reduction in force. (Doc. 37, p. 4). Plaintiff questions whether Defendants have offered "compelling proof" that a decision was made prior to January 11th to reduce the employment status of Plaintiff. (*Id.*).

Plaintiff argues that she was treated differently than the other two employees made the subject of the reduction in force. Plaintiff claims that the other two employees worked in different positions and did not require the same level of training. Also, the other two employees were guaranteed a 24-hour work week, and Plaintiff was not guaranteed any hours. (Doc. 37, p. 5 (citing Doc. 32-4, pp. 13, 15)).

Plaintiff clarifies that she suspected that she was the victim of discrimination based on being a cancer survivor when she was moved from her full-time status. Her suspicion was "confirmed" when Hannie contacted her and advised that Defendants were concerned that she would be absent from work. Also, Plaintiff testified that she was offered PRN "until she could find another job", which suggested to her that she was, effectively, being discharged. (Doc. 37, p. 5).

Plaintiff avers that Defendants cannot conclusively show a nondiscriminatory reason for the decision to reduce Plaintiff from full-time to PRN status. (Doc. 37, p. 7). In support, Plaintiff again argues that her evidence shows that she informed her supervisor of having cancer before January 9, 2017, and that her medical condition was discussed with Dalton on January 11, 2017. All Defendants have shown through the Dalton email is that "a therapist" was "selected" to be changed from full-time status to PRN, and this was approved by "corporate" on January 11, 2017. Plaintiff challenges that she was "the therapist" made the subject of the reduction in force before January 11, 2017. (Doc. 37, p. 7). Plaintiff concludes that when all possible legitimate reasons for Defendants' actions have been eliminated, it is reasonable to assume that Defendants acted based on an impermissible consideration. (Doc. 37, p. 8).

Regarding the potential liability of Oceans Healthcare, LLC, Plaintiff argues that "superficially distinct entities" may be liable if they represent "an integrated enterprise". (Doc. 37, p. 8). The critical question, suggests Plaintiff, is what entity made the final employment decision. (*Id*. (citing *Trevino v. Celanese Corp*., 701 F.2d 397, 404 (5th Cir. 1983)(citing *Odriozola v. Superior Cosmetic Distributors, Inc*., 531 F. Supp. 1070, 1076 (D.P.R. 1982)). Plaintiff argues that all three Defendants comprised the "integrated enterprise". (Doc. 37, p. 9). Plaintiff claims that she has presented evidence that Oceans Acquisitions, Inc. and Oceans Healthcare, LLC are one and the same or that Oceans Healthcare, LLC exercised control over this matter. (*Id*.). Plaintiff specifically relies upon an email from Patrick Corbett, identifying himself as the "EVP & CAO" of Oceans Healthcare, LLC, where he scheduled the January 6, 2017 conference call, where Defendants claim the decision was made to change the employment status of three employees. (*Id*. (citing Doc. 32-3, pp. 8-9)).

### 3.    Defendants' Reply (Doc. 39)

Defendants first point out that Plaintiff did not file a separate statement of controverted facts pursuant to Local Rule 56(b); therefore, Defendants argue that all facts in their statement of material facts are deemed admitted in accordance with Local Rule 56(b), and summary judgment should be granted.[3]  (Doc. 39, p. 1).

Defendants argue that Plaintiff cannot offer controverting evidence to refute that the decision to alter Plaintiff's employment status was made by January 6.  Also, the person to whom Plaintiff claims she told of her employment history, Joyce Garon, testified that  she does not remember discussing this with Plaintiff and would never have shared Plaintiff's medical information with anyone else.  (Doc. 39, pp. 1-2).

Defendants next contend that Plaintiff did not dispute through competent summary judgment evidence that the Hospital had a significant drop in patient census and revenue.  (Doc. 39, p. 3).  Also, the fact that the employees chosen for the reduction in force were the last three hired, further demonstrates the legitimate, non-discriminatory nature of the decision.  (*Id*.).

Defendants dispute that they stated that Plaintiff's reduced employment status was in place "until [she] found another job".  (Doc. 39, p. 4).  Even if Defendants had made the statement, Defendants argue that it is not an ultimatum and does not evidence constructive discharge.  (*Id*. (citing *Richio v. Miami-Dade Cty*., 163 F. Supp. 2d 1352, 1368 (S.D. Fla. 2001); *Faruki v. Parsons S.I.P., Inc*., 123 F.3d 315, 319 (5th Cir. 1997)).  Also, Defendants argue that Plaintiff's subjective belief that she suspected discrimination and interpreted the reduction in employment as being "let go", is not enough to amount to constructive discharge.  (Doc. 39, p. 4).  Further, Defendants offer

---

[3] While this may be accurate, Plaintiff did submit statement of facts in conjunction with her cross-motion.  The Court will consider Plaintiff's briefing and statement of facts at Doc. 31-1.

the affidavit of Garon, reflecting that Plaintiff did not wish to commute from Hammond to Baton Rouge unless it was for a full-time position. (Doc. 39, p. 5 (citing Doc. 39-1, ¶ 11)).

Finally, Defendants maintain that Oceans Healthcare, LLC was not Plaintiff's employer, and Plaintiff's "speculation" attempting to show that Oceans Healthcare, LLC could potentially be liable, is unreliable. (Doc. 39, p. 5).

## C. Applicable Legal Authority - Americans with Disabilities Act ("ADA")

The ADA prohibits employers from discriminating against a "qualified individual on the basis of disability" regarding numerous terms and conditions of employment, 42 U.S.C. § 12112(a); *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360–61, 121 S. Ct. 955, 960, 148 L. Ed. 2d 866 (2001). It was adopted so as "to provide a clear and comprehensive national mandate to end discrimination against individuals with disabilities," S. REP. NO. 101-116, at 2 (1989); *see also* 42 U.S.C. § 12101(b) (listing the ADA's varied purposes, including "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities"); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801, 119 S. Ct. 1597, 1601, 143 L. Ed. 2d 966 (1999) (construing 42 U.S.C. § 12101(a)(8) and (9) as embodying the ADA's intent "to eliminate unwarranted discrimination against disabled individuals in order to both guarantee those individuals equal opportunity and to provide the Nation with the benefit of their consequently increased productivity"). Absent direct evidence of an employer's discriminatory intent, ADA discrimination claims are evaluated under the burden-shifting framework erected in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *See, e.g.*, *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615, n. 6 (5th Cir. 2009); *Powers v. Woodlands Religious Cmty., Inc.*, 323 F. App'x. 300, 302 (5th Cir. 2009); *Simpson v. Des Moines Water Works*, 425 F.3d 538, 542 (8th Cir. 2005).

In accordance with this mandatory paradigm, a plaintiff first bears the burden to establish a *prima facie* case of discrimination. *See, e.g.*, *Palmer v. Albertson's LLC*, 418 F. App'x. 885 (11th Cir. 2011); *Buchsbaum v. Univ. Physicians Plan*, 55 F. App'x. 40, 45 (3d Cir. 2002). To articulate such a case and thus meet his or her initial obligation for purposes of the ADA, a plaintiff must show that (1) he or she is disabled or perceived as disabled under the ADA; (2) is qualified to perform the essential functions of his or her job; and (3) was discharged or otherwise adversely affected in whole or in part because of his or her disability or perceived disability. *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279 (5th Cir. 2000); *see also, e.g.*, *Cody v. Prairie Ethanol, LLC*, 763 F.3d 992, 996 (8th Cir. 2014); *Richardson v. Friendly Ice Cream Corp.*, 594 F.3d 69, 74 (1st Cir. 2010). *See also Suggs v. Central Oil of Baton Rouge, LLC*, 2014 WL 3037213, *5 (M.D. La. July 3, 2014). A fact-intensive process, discrete provisions and precepts govern each element's analysis.

The ADA itself demarcates the first requirement, giving a specific "definition of disability." 42 U.S.C. § 12102(1); *see also Flanner v. Chase Inv. Servs. Corp.*, 600 F. App'x. 914, 922 (5th Cir. 2015)(quoting 42 U.S.C. § 12102(3)(A)). Since 2008, the ADA has expressly mandated that a court interpret its unique "definition of disability ... in favor of broad coverage of individuals." 42 U.S.C. § 12102(4)(A); *Molina v. DSI Renal, Inc.*, 840 F. Supp. 2d 984, 993 (W.D. Tex. 2012).

The second element—a disabled individual only qualifies for the ADA's protection "if either with or without a reasonable accommodation, he or she can perform the essential functions of the job," *Santiago Vera v. Williams Hospitality Grp.*, 73 F. Supp. 2d 161, 166 (D.P.R. 1999) (construing 42 U.S.C. § 12111(8)) —has been expounded in case law construing the ADA and its implementing regulations, *see, e.g.*, *Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 194–96,

122 S. Ct. 681, 689–90, 151 L. Ed. 2d 615 (2002); *EEOC v. Res. for Human Dev., Inc.*, 827 F. Supp. 2d 688, 694 n. 5 (E.D. La.2011); *Francis v. City of Meriden*, 129 F.3d 281, 283, n. 1 (2d Cir.1997). The second element is uncontested and not at issue in the motions presently before the Court.

For the third prong, Plaintiff resigned her employment and was not formally discharged by Defendants. However, a resignation is actionable under the ADA if the resignation qualifies as a constructive discharge. *See Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001); *Robinson v. BGM Am., Inc.*, 964 F. Supp. 2d 552, 575 (D.S.C. 2013); *Anderson v. Bellsouth Telecommunications, LLC*, 2015 WL 461698, at *14 (N.D. Ala. Feb. 4, 2015). In determining whether an employer's actions constitute a constructive discharge we ask whether 'working conditions [became] so intolerable that a reasonable person in the employee's position would have felt compelled to resign.' " *Aryain v. Wal–Mart Stores Texas LP*, 534 F.3d 473, 480 (5th Cir. 2008) (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141, 124 S. Ct. 2342, 159 L. Ed. 2d 204 (2004)); *see Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 805 (Tex. 2010). *See also*, *Perret v. Nationwide Mut. Ins. Co.*, 770 F.3d 336, 338–39 (5th Cir. 2014).

Upon this three-part showing, a shift occurs. Now, the defendant-employer needs to articulate a legitimate, non-discriminatory reason for the challenged action. *Chapman v. AI Transport,* 229 F.3d 1012, 1024 (11th Cir.2000); *accord Khalfani v. Balfour Beatty Cmtys., L.L.C.*, 595 F. App'x. 363, 365 (5th Cir.2014). If a defendant succeeds, a plaintiff must then prove this reason to be "pretextual," ineluctably invalid. *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 362–63 (5th Cir.2013) (citing *McDonnell Douglas Corp.*, 411 U.S. 792, 93 S. Ct. 1817).

**D.  Application to Instant Motions**

Plaintiff and Defendants have, essentially, filed cross motions for summary judgment. With minor exception, the arguments advanced in support of and in opposition to both motions are the same.  For this reason, the Court considers both motions together, analyzing their common issues simultaneously, while applying the appropriate summary judgment burden and drawing the appropriate reasonable inferences for each motion.

For the reasons set forth below, the Court will deny Plaintiff's motion for partial summary judgment as there are genuine issues of material fact which preclude a finding that Plaintiff has proven her case for disability discrimination under the ADA.  The Court will grant Defendants' motion for summary judgment.  Assuming that Plaintiff will be able to prove her *prima facie* case at trial, Defendants have proven a legitimate, non-discriminatory reason for the change in Plaintiff's employment status.  Plaintiff did not show that Defendants' reason was a pretext for otherwise discriminatory reasons.  Therefore, Defendants' motion will be granted, and this matter will be dismissed with prejudice as a matter of law.

**1.  Evidentiary Issue: Deposition of Hannie, Declaration of Hannie, and Audio Recording of Hannie**

Defendants challenge Plaintiff's reliance upon the deposition because he failed to "comply with a Subpoena and Notice of Deposition and walked out before his deposition was completed". (Doc. 36, p. 2).  However, Defendants do not offer any legal support for this position or additional argument with regard to the deposition of Hannie.  Plaintiff also offers no legal support for her general position that the deposition, declaration and recording of Hannie should be considered. (Doc. 40, pp. 1-2).

The Court reviewed the deposition transcript of Hannie at Doc. 31-4.  Counsel for Defendants noticed and deposed Hannie.  The transcript is over 200 pages.  On more than one

occasion, both Hannie and Plaintiff's counsel asked how much longer defense counsel would be and/or how many more questions she had for the witness. (Doc. 31-4, pp. 106-107, 128, 133-34). Each time defense counsel responded that she was almost finished or did not have much more, and she continued with her questioning. (*Id.*). She ultimately concluded that she had completed her questioning. (Doc. 31-4, pp. 139-40). After Plaintiff's counsel completed his examination of the witness, defense counsel attempted to ask a few follow-up questions "based on opposing counsel's questions". (Doc. 31-4, p. 187). At this time, Hannie stated that he was not staying and was "done". He left the deposition. (Doc. 31-4, pp. 187-88). Additionally, the Court notes that Hannie is a third-party witness from whom any party could have obtained an affidavit or statement.

While Hannie did leave his deposition early, both parties questioned him, he appeared in response to the subpoena, and he complied with the notice. (Doc. 31-4; *see Tranchant v. Environmental Monitoring Service, Inc*., Civ. A. No. 00-2196, 2001 WL 1160864 (E.D. La. Oct. 2, 2001)(failure to appear for a deposition when a subpoena was served is grounds for contempt). For the foregoing reasons, the Court will consider the deposition testimony of Hannie.

Defendants' true concern appears to be the declaration of Hannie and the audio recording of Hannie. Defendants also seek to strike consideration of these two items. Defendants argue that the Court made a prior ruling on a motion *in limine* brought by Defendants. The ruling was based on the Plaintiff's representation that she did not intend to use the declaration or recording of Hannie at trial. (Doc. 36, p. 2 (citing Doc. 20; Doc. 23, p. 2)). Defendants argue that Plaintiff should not be allowed to rely upon the declaration and the recording now on summary judgment after making such a representation. Defendants also argue that Hannie "stormed out of his deposition" before Defendants could cross-examine him on the declaration or recording. The combination of Plaintiff's representation that she would not utilize these items at trial, the Court's reliance upon

Plaintiff's representation to render a motion *in limine* moot, and Hannie obstructing Defendants' opportunity to cross-examine him on these items renders reliance upon these items faulty and unfair. (Doc. 36, pp. 2-3 (citing FRE Rule 106)). Defendants do not cite to any cases supporting their argument.

Though the Defendants' arguments are persuasive regarding the declaration and recording, the issue appears moot. The Court has reviewed the evidence submitted by both parties in support of their respective motions and in opposition to each party's motion. Neither party relies upon the declaration or the recording of Hannie. Therefore, it is not necessary for the Court to consider these items.

### 2. Summary Judgment on Plaintiff's ADA Claims

Establishing a *prima facie* case is designed as a minimal burden, and it is not intended to be rigid or onerous. *Holtz v. Rockefeller & Co., Inc*., 258 F.3d 62, 77 (2d Cir. 2001); *Abdu-Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 467 (2d Cir. 2001). However, this Court need not decide if the *prima facie* case was satisfied; even assuming that the Plaintiff met this burden, Plaintiff fails to rebut Defendants' legitimate, non-discriminatory reasons for her reduction in employment status or offer sufficient evidence supporting a claim of discrimination. *See, e.g., McDaniel v. Temple Independent School Dist.,* 770 F.2d 1340, 1346 (5th Cir. 1985); *O'Neal v. Roadway Express*, 181 Fed. Appx. 417, 420 (5th Cir. 2006); *Fahim v. Marriott Hotel Servs*., 551 F.3d 344, 350 (5th Cir. 2008).

### a. Legitimate, Non-Discriminatory Reason

"As stated above, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the employment decision." *Palacios v. City of Crystal City, Texas*, 634 F. App'x. 399, 401-02 (5th Cir. 2015). "The defendant's burden in this second step is met by

producing evidence which, '*taken as a true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *Juneau v. Quality Christmas Tree, Ltd.*, No. CIV.A. H-13-2535, 2014 WL 3796406, at *2 (S.D. Tex. July 30, 2014) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993) (emphasis in original)). This burden is one of production, not persuasion, and can involve no assessment of credibility. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105, 117 (2000).

To meet the burden of production, an employer must state its nondiscriminatory reasons in a coherent manner that gives the employee a realistic opportunity to identify the kind of evidence needed to demonstrate that the employer's reason is pretextual. *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004). Though an employer may rely on subjective qualities in making personnel decisions, an employer must clearly "articulate in some detail a more specific reason than its own vague conclusion and feeling about the employee." *Id.*

Defendants explain the non-discriminatory reason for Plaintiff's change in employment status in detail. Defendants maintain a constant ratio of no more than 10 patients to each staff member. (Doc. 36-3, p. 3). When Plaintiff was hired, the patient census had consistently been over 40 patients per month, and a fourth therapist, Plaintiff, was hired. Shortly thereafter, in December 2016, there was a sharp decrease in the patient census, as low as 12-15 patients. This downward trend was discussed amongst management, and Defendants claim that personnel were notified that if the patient attendance did not increase, then there would be adjustments. (Doc. 36-3, p. 4). Valerie Dalton suggested a reduction in force of three specific workers, a nurse, a driver and a therapist (Plaintiff), in response to the decreased census and to make necessary financial

cuts. (*Id.*). The employee manual provides considerations given when making a reduction in force:

### LOW CENSUS PERIODS

We strive to provide steady employment to all employees. Unfortunately, there are times that business conditions make a reduction in force necessary. If this situation occurs, those employees who best meet operational needs of the facility will be retained. This is based upon the jobs available, the skills/abilities required, and the performance history of the employees. When these factors are equal between two or more employees, seniority will be the determining factor.

(Doc. 36-5, p. 3).

On January 6, 2017, the decision was made that adjustments were necessary as the projections indicated that the decrease in patient census would continue for several months. (Doc. 36-3). Defendants provided evidence that Dalton not only suggested the reduction in force, but also the specific names as to who should be subjected to the reduction in force. Dalton's plan was later finalized, and her intention was to implement the reduction in force the afternoon of January 11, 2017. (Doc. 36-3, pp. 4-5). However, Plaintiff advised Dalton of her medical appointment and medical history on January 11th before Dalton could implement the reduction in force. Dalton claims that she found Plaintiff's disclosure odd, and she wanted to be certain that it was proper to proceed with the reduction in force. (Doc. 36-3, p. 5). She postponed the implementation of the reduction in force by a day, consulted with "corporate", and was advised that since the decision to implement the reduction in force (including Plaintiff) was made before Plaintiff volunteered her medical information, then Dalton was authorized to proceed. (*Id.*). Dalton did so on January 12, 2017. (*Id.*).

Defendants have submitted evidence of the timeline of the reduction in force, including a copy of the patient census and affidavits of numerous members of management involved in the decision-making process. Further, Plaintiff was the most recent therapist to be hired, having only

worked two months at the time of the reduction in force. The selection of Plaintiff was in accordance with the company handbook and policy. The reduction in work hours due to budgetary constraints has been identified as a legitimate, nondiscriminatory reason. *See EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173 (5th Cir. 1999); *Claiborne v. Recovery School District*, 690 F. App'x. 249, 257 (5th Cir. 2017)(when faced with "rapidly plummeting enrollment", RIF was necessary to balance budget; found to be legitimate, non-discriminatory reason in ADA context). Plaintiff offers no evidence to refute the patient census, company policy, or the internal decision-making process. While Plaintiff argues disbelief over the sudden downturn in patient attendance and implies that changes were made for other reasons, Plaintiff offers no proof or evidence to counter Defendants' reason for the change in employment.

Defendants did not terminate Plaintiff's employment. Defendants reduced Plaintiff's employment status from full-time therapist to PRN, on an as needed basis. Plaintiff decided on her own to resign. There are issues of fact as to Plaintiff's true reason for resigning. Plaintiff suggests that she was constructively discharged and had no other choice because she was only given "as needed" hours. Also, she later discovered that the other two employees subjected to the reduction in force were given 20-hour weeks, compared to the "as needed" basis offered to Plaintiff. Also, Plaintiff claims that Hannie told her that she was "let go" because Defendants were concerned about how much work she would miss due to cancer. However, it is undisputed that Plaintiff was not told this until after she decided to resign. Finally, the affidavit of Plaintiff's immediate supervisor reflects that Plaintiff resigned because she did not wish to commute to Baton Rouge from Hammond for a part time position. Regardless of her true reason for resigning, the undisputed evidence shows that Defendants responded to a downward trend in patient attendance and decreased revenue with a reduction in force; Plaintiff was offered a reduced position of PRN;

and Plaintiff resigned instead. There is no evidence, other than temporal proximity, that Plaintiff's medical appointment to have a mammogram and her reported prior history with breast cancer was a factor or consideration in Defendants' reduction in force.

The Court finds that Defendants have satisfied their burden of production on this issue. When, as here, the employer presents evidence of a legitimate, non-discriminatory reason for its employment action, the burden shifts to the employee to present evidence from which a reasonable fact finder could conclude that the employer's stated reason for the employment action was a mere pretext for discriminatory conduct. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248 (1981). The next question is whether Plaintiff has demonstrated that these various reasons are merely a pretext for disability discrimination.

*b.*    *Pretext*

"At [the final] step of the *McDonnell Douglas* analysis, an [ADA] plaintiff must prove that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 476 (5th Cir. 2015) (citations and quotations omitted). "At the summary judgment stage, the question is whether the plaintiff has shown that there is a genuine issue of material fact as to whether this reason was pretextual." *Palacios*, 2015 WL 4732254, at *3 (citation omitted). "A plaintiff may show [a genuine issue of material fact regarding] pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Id.* (citation omitted). The key issue with pretext is whether the employer's justification, "even if incorrect, was the real reason for the plaintiff's termination. A plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Goudeau*, 793 F.3d at 476. (citations,

quotations, and alterations omitted). "At the end of the day, the pretext inquiry asks whether there is sufficient evidence demonstrating the falsity of the employer's explanation, taken together with the *prima facie* case, to allow the jury to find that discrimination was the but-for cause" of the change in employment status of the employee. *See id.* at 478.

Even assuming that Plaintiff made a *prima facie* case of disability discrimination under the ADA, her claim fails because she has not and cannot rebut Defendants' proffered non-discriminatory reason for a reduction in force. Temporal proximity gets Plaintiff through her *prima facie* case, but it does not, on its own, establish that Defendants' stated explanation for her demotion was mere pretext. *Garcia v. Professional Contract Services, Inc.,* 938 F.3d 236, 243 (5th Cir. 2019)(citing *Strong v. Univ. Healthcare Sys.*, L.L.C., 482 F.3d 802, 808 (5th Cir. 2007)). "At the pretext stage, the Supreme Court's decision in *Nassar*[4] requires a showing of but-for causation, which requires more than mere temporal proximity." *Garcia*, 938 F.3d at 243-44 (citing *id.*; *see also Feist*, 730 F.3d at 454 ("After the employer states its [legitimate] reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation, which the employee accomplishes by showing that the adverse action would not have occurred but for the employer's retaliatory motive" (internal citation and quotation marks omitted)(citing *Nassar*, 133 S.Ct. at 2533))). "The combination of suspicious timing with other significant evidence of pretext can be sufficient to survive summary judgment." *Garcia*, 938 F.3d at 244 (citing *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 409 (5th Cir. 1999)).

In its recent opinion in *Garcia*, the Fifth Circuit highlighted *Strong v. Univ. Healthcare Sys.*, stating that the Fifth Circuit "upheld the district court's grant of summary judgment because the plaintiff's only evidence of pretext was temporal proximity." *Garcia*, 938 F.3d at 244 (citing

---

[4] *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013).

*Strong*, 482 F.3d at 808). *See also, United States ex rel King v. Solvay Pharmaceuticals, Inc*., 871 F.3d 318, 334 (5th Cir. 2017)(evidence of temporal proximity combined with positive performance reviews was not enough to create an issue of fact regarding pretext). Here, the Court is faced with the same scenario. Plaintiff has only argued and evidenced temporal proximity. She has not shown disparate treatment. In fact, two other employees were subjected to the reduction in force as well. While Plaintiff argues that the other two employees were demoted from full time to part time, she also recognizes the fact that the other two employees were in different positions than Plaintiff (a nurse and driver, as opposed to a therapist), and, therefore, they are not situated identically to Plaintiff. *See Lee v. Ks. City So. Rwy. Co.,* 574 F.3d 253 (5th Cir. 2009)("nearly identical circumstances" must be shown when comparing the plaintiff's treatment to that of other employees; nearly identical or similarly situated means holding the same job or responsibilities, sharing a supervisor, or having comparable histories); *Wyvill v. United Cos. Life Ins. Co*., 212 F.3d 296, 302 (5th Cir. 2000)(two employees were not similarly situated because they had different jobs).

Plaintiff does not dispute the company policy of using seniority as a basis to determine whose hours will be reduced in times of low patient census, nor does she dispute that she was the most recent therapist hired. Significantly, she has no evidence at all to dispute the patient census and fiscal projections. The only argument advanced by Plaintiff and supported by summary judgment evidence is the close proximity in time between her mammogram, request for leave to attend a medical appointment, and voluntary advisement of her medical history with the reduction in force. While Plaintiff also attempts to cast doubt and create an issue of fact as to when the actual decision to include Plaintiff in a reduction in force was made, there is no evidence that the decision was made after Plaintiff told Dalton about her medical appointment and history on January 11,

2017. Assuming the decision was made after Plaintiff requested leave to attend the medical appointment and discussed her angst with her immediate supervisor, there is no evidence that the supervisor shared this information with anyone or that she participated in the process of deciding to implement a reduction in force and in the selection of employees to be demoted. In fact, the record evidence reflects that Plaintiff's supervisor does not recall this conversation and certainly did not share the information with anyone. Therefore, there is no evidence supporting that Plaintiff's medical information was known *before* the *decision* was made to implement the reduction in force.

Simply put, the evidence supports that but-for the low patient census and company policy, Plaintiff would not have been subjected to the reduction in force. Therefore, Defendants' motion for summary judgment should be granted as a matter of law. *See, Hernandez v. Yellow Transp., Inc.,* 670 F.3d 644, 660 (5th Cir. 2012)(citing *Strong*, 482 F.3d at 808)("But for" causation, however, cannot be established by temporal proximity alone." Evidence of disparate treatment where the plaintiff was terminated and his co-worker received a warning combined with temporal proximity did not establish "but for" causation.); *Alfred v. Louisiana Dept. of Corrections*, 619 F. App'x. 324, 326-28 (5th Cir. 2015)(allegations of inconsistencies found insufficient to preclude summary judgment; at most, there was a factual dispute regarding timing of notice of violation and other acts; temporal proximity alone was not enough to show but for causation).

Strangely, Plaintiff's argument that Defendants' reason for termination was a pretext focuses on Hannie's testimony that it was difficult to find licensed therapists for hire and that it was possible for therapists to be relocated to the actual hospital facility from the IOP. (Doc. 31-2, p. 11 (citing Doc. 31-4, pp. 149-150)). The Court does not find this testimony persuasive or directly relevant to the issue of the reduction in force, decreased patient census, and fiscal

projection for the IOP, where Plaintiff was employed.  It is important to note that hiring was not the need; reducing the staff was the need at the time.  Also, Plaintiff was not terminated.  She was offered a reduced position on an as needed basis.  There is no record evidence disputing that if patient attendance increased in the coming months, that Plaintiff would not have been returned to full time status.  However, Plaintiff chose to resign.

What the Court finds more relevant to Plaintiff's case is this deposition testimony of Hannie:

> Q.     And what did she [Valerie Dalton] tell you as to why she was reducing her [Plaintiff] from full-time to PRN?
>
> A.     That she found out that she has a medical condition and that she was not going to – you know, the fact that she had just hired two new therapists, she wasn't going to let this person's medical condition screw with taking care of the patients.
>
> In other words, she wasn't going to be left shorthanded because of somebody's medical conditions, and she felt like, since she just hired this person, she should have had some sort of heads-up or something before – or at the time of hire.

(Doc. 31-4, pp. 123-24).

Despite the foregoing testimony, Plaintiff does not argue this specific testimony as evidence of a pretext.  This may be because when Hannie was directly asked if the decision to reduce the employment status of Plaintiff was made before it was known that she was a breast cancer survivor, whether it would be illegal to move forward with the change in employment status, Hannie responded:

> No.  That's not my stance.  Just because someone had an illness in their past doesn't mean that – that we can't terminate them. … We're an at will state.

(Doc. 31-4, pp. 132-33).  Hannie also confirmed that he was not a part of the decision-making process as to how to address the decreased patient census and fiscal projection as well as the discussion to implement a reduction in force.  (Doc. 31-4, p. 133).

While the testimony of Hannie suggests that Dalton voiced concern over the anticipated absence of Plaintiff due to a reported medical condition, Hannie counters with the admission that he had no knowledge of the patient census, the analysis of same, the projected downturn fiscally for the IOP, the discussions of a reduction in force, the role of seniority in the application of the reduction in force, and the timing of the census, discussion, decision, and the later discovery of the medical information. Hannie's testimony does not change the fact that the decision to implement the reduction in force, which included Plaintiff, was made *before* Plaintiff advised Dalton of her medical situation. Even accepting Hannie's testimony as true, it does not challenge the legitimate non-discriminatory reason for changing Plaintiff's employment status or change the fact that the decision to reduce the employment of three employees based on a patient census was made days *before* Dalton purportedly made this comment. Considered in the proper context of the chronology of events, Dalton's purported comment, at most, was a "stray" or misplaced comment, which does not serve to create an inference of discriminatory motive. *See, e.g., Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 512 (4th Cir. 1994), *cert. denied* 513 U.S. 1058, 115 S. Ct. 666, 130 L. Ed. 2d 600 (1994)(statement that "there comes a time when we have to make room for younger people" did not create an inference of age discrimination).

Having considered the evidence of the patient census and the fiscal projections, as well as the affidavits supporting the census and plan for a reduction in force, the Court does not find that Hannie's testimony supports a finding of pretext or a discriminatory intent in the implementation of a reduction in force in accordance with company policy. Hannie's testimony does not conflict with Defendants' legitimate, non-discriminatory reason, and there is abundant and uncontroverted evidence that Defendants did not discriminate in the change of employment status of Plaintiff. *See Campbell v. Zayo Group, LLC,* 656 F. App'x. 711, 715-16 (5th Cir. 2016)(citing *Moss v. BMC*

*Software, Inc.*, 610 F.3d 917, 926 (5th Cir. 2010); *Goree v. Comm'n Lincoln Par. Det. Ctr*., 437

F. App'x. 329, 334 (5th Cir. 2011))(In an age discrimination case under the ADEA, the defendant

implemented a RIF in accordance with the company's seniority policy. The district court found

that evidence that arose after the RIF was implemented did not evidence pretext. "The ADEA was

not intended to be a vehicle for judicial second-guessing of employment decisions…."); *Burton*

*v. Freescale Semiconductor, Inc*., 798 F.3d 222, 238 (5th Cir. 2015)("[A] purported reason for a

decision that postdates the actual decision is necessarily illegitimate."); *Patrick v. Ridge*, 394 F.3d

311, 319 (5th Cir. 2004)(In addressing how evidence of events that occurred after the decision to

alter employment was made when offered as evidence of pretext, it was a matter of common sense

that "[t]he employer could not have been motivated by knowledge it did not have" at the time the

decision was made.). *See also, Russell v. McKinney Hosp. Venture,* 235 F.3d 219, 223 (5th Cir.

2000)(pretext is insufficient to establish discrimination when the record reveals a non-

discriminatory reason for the employer's decision, or when the plaintiff only creates a weak issue

of fact as to the employer's reason and there is abundant and uncontroverted evidence that no

discrimination occurred); *Julian v. City of Houston*, 618 F. App'x. 211, 215 (5th Cir.

2015)(observing that employee's evidence does not "demonstrate pretext [where] it does not serve

to cast any doubt on the legitimate, nondiscriminatory reason the [employer] has proffered for its

decision").

The Court finds that Plaintiff has failed to present evidence from which a reasonable trier

of fact could conclude that Defendants' stated reason for implementing a reduction in force (*i.e.*

decreased patient attendance and downward fiscal projections) was a mere pretext for otherwise

discriminatory conduct. Accordingly, Defendants' motion for summary judgment is granted, and

Plaintiff's disability discrimination claim against Defendants under the ADA shall be dismissed.

### E.    Plaintiff's LEDL Claims

Plaintiff is also bringing claims under state law and the Louisiana Employment Discrimination Law ("LEDL").  La. R.S. 23:301 *et seq*.  (Doc. 5).  LEDL claims are analyzed under the same framework as the ADA.  Therefore, where a plaintiff has no cognizable ADA claim, the LEDL claim must also fail.  *Credeur v. State of Louisiana Thruough Office of Attorney Gen.*, 860 F.3d 785, 791 (5th Cir. 2017).

As set forth above, the Court has found that, even if Plaintiff is able to meet her burden of proving a *prima facie* case of disability discrimination at trial, there are no genuine issues of material fact of Defendants' evidence a legitimate, non-discriminatory reason for changing Plaintiff's employment status from full time to as needed through the implementation of a reduction in force.  Plaintiff can not prove that Defendants' reason is a pretext under the law. Therefore, Plaintiff's claims are properly dismissed on summary judgment as a matter of law, both under the ADA and the LEDL.

### F.    Ocean's Healthcare, LLC

Plaintiff does not dispute that her employer was Oceans Behavioral Hospital of Baton Rouge, LLC.  (Doc. 31-2, p. 4).  Plaintiff attempts to also implicate Oceans Healthcare, LLC because Edward Hannie was allegedly the human resources director for Oceans Healthcare, LLC and Oceans Acquisitions, Inc. because it is the parent company of Oceans Healthcare, LLC.  (*Id*.). Plaintiff also argues that the Defendants constituted an integrated enterprise.  (Doc. 37, p. 8). Plaintiff argues that the "critical question to be answered then is: What entity made the final decisions regarding employment matters related to the person claiming discrimination?"  (*Id.* (citing *Odriozola v. Superior Cosmetic Distributors, Inc*., 531 F. Supp. 1070, 1076 (D.P.R. 1982)). Plaintiff claims that Oceans Healthcare, LLC made the final decision regarding employment

matters and is therefore potentially liable due to Hannie's alleged employment by Oceans Healthcare, LLC. However, and as is set forth above, Hannie had no involvement with the patient census and discussion regarding the results of the census and plan to implement a reduction in force. He admits that he was not a decision-maker with regard to the change in employment status. Therefore, his employer is irrelevant.

Defendants succinctly argue that neither Oceans Healthcare, LLC, nor Oceans Acquisitions, Inc. are the employers of Plaintiff. (Doc. 36, pp. 3-4). A parent company is not considered the employer of its subsidiary's employees. (Doc. 36, p. 4 (citing *Tipton v. Northrup Grumman Corp.*, 242 F. App'x 187, 189 (5th Cir. 2007)(citing *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997))). It is the employer that is potentially liable for the alleged acts of employment discrimination. 42 U.S.C. § 12112(a); *Dean v. City of New Orleans,* Civ. A. No. 11-2209, 2012 WL 2564954 (E.D. La. July 2, 2012), *aff'd* 544 F. App'x 353 (5th Cir. 2013)(ADA requires an employer-employee relationship); *Janette v. Am. Fid. Grp., Ltd.*, 298 F. App'x 467, 471 (6th Cir. 2008). Therefore, since Oceans Behavioral Hospital of Baton Rouge, LLC is the only employer of Plaintiff and, therefore, the only potentially liable party, Oceans Healthcare, LLC and Oceans Acquisitions, Inc. should be dismissed.

Regardless of the foregoing, the Court has found that Plaintiff's claims of disability discrimination should be dismissed as a matter of law. These claims are to be dismissed against all Defendants, regardless of the arguments set forth above.

IV. **Conclusion**

Accordingly,

**IT IS ORDERED** that *Plaintiff's Motion for Partial Summary Judgment,* (Doc. 31) is **DENIED**.

**IT IS FURTHER ORDERED** that *Defendants' Motion for Summary Judgment* (Doc. 32)

is **GRANTED**.  Plaintiff's claims against all Defendants are dismissed with prejudice.

Signed in Baton Rouge, Louisiana, on December 9, 2019.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**